UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ASSISTANT DEPUTY WARDENS/DEPUTY WARDENS
ASSOCIATION, for itself and on behalf of its members;
SIDNEY SCHWARTZBAUM, as President of the Assistant
Deputy Wardens/Deputy Wardens Association; PAMELA
WALTON, MERVIN O. BATSON, BRENDA ROSS and
WILLIAM DIAZ, individually and on behalf of all similarly
situated members of the Assistant Deputy Wardens/Deputy
Wardens Association,

**COMPLAINT**

Plaintiffs,

-and-

THE CITY OF NEW YORK; THE NEW YORK CITY
DEPARTMENT OF CORRECTION; MAYOR WILLIAM
DE BLASIO and NEW YORK CITY DEPARTMENT OF
CORRECTION COMMISSIONER JOSEPH PONTE, in
their individual and official Capacities,

Defendants.
-----------------------------------------------------------------------x

The ASSISTANT DEPUTY WARDENS/DEPUTY WARDENS ASSOCIATION, for

itself and on behalf of its members (hereinafter "ADW/DWA" or "Union"); SIDNEY

SCHWARTZBAUM, as President of the Assistant Deputy Wardens/Deputy Wardens

Association (hereinafter "Union President" or "Schwartzbaum"); PAMELA WALTON

(hereinafter "Walton"), MERVIN O. BATSON (hereinafter "Batson"), BRENDA ROSS

(hereinafter "Ross"), and WILLIAM DIAZ (hereinafter "Diaz"), individually and on behalf of all

similarly situated members of the Assistant Deputy Wardens/Deputy Wardens Association

(collectively, "Plaintiffs"), by their attorneys, Certilman Balin Adler & Hyman, LLP, allege the

following upon information and belief against THE CITY OF NEW YORK (hereinafter "City");

THE NEW YORK CITY DEPARTMENT OF CORRECTION (hereinafter "DOC" or

"Department"); MAYOR WILLIAM de BLASIO (hereinafter "Mayor") and NEW YORK CITY DEPARTMENT OF CORRECTION COMMISSIONER JOSEPH PONTE (hereinafter "DOC Commissioner"), in their individual and official Capacities (collectively "Defendants").

## NATURE OF ACTION

1.      This is an action, *inter alia*, brought to address discrimination in employment on the basis of race, color, and gender in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the New York State Human Rights Law (New York Executive Law) (hereinafter "NYSHRL") §§ 290 and 296; and the New York City Human Rights Law (New York City Administrative Code) (hereinafter "NYCHRL") §§ 8-101, et seq.

2.      The action seeks declaratory relief and compensatory and punitive damages to secure future protection and to redress the past deprivation of rights secured to Plaintiffs under these federal, state, and local laws.

3.      Plaintiffs allege that Defendants have implemented and continue to implement a discriminatory limitation on the amount of compensatory time for which employees in the rank of Deputy Warden may be compensated, and said limitation has a disparate effect and impact on a bargaining unit that primarily consists of members in protected class(es).

4.      The actions complained of herein violate the enumerated statutory provisions because of Deputy Wardens' status in protected class(es).

5.      Plaintiffs seek: (a) declaratory relief, including but not limited to the issuance of a declaration that the policies, practices and/or customs described herein are violative of federal, state and local laws; (b) an order establishing procedures to correct the present effects of Defendants' discriminatory policies and practices; (c) compensation and other relief to make

2876369.1

whole all adversely affected members of the Union who have been injured by the Defendants' unlawful hiring practices; and (d) all other, further relief that the Court deems just and proper.

## JURISDICTION AND VENUE

6.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, and 1343(a)(3)-(4), and 28 U.S.C. § 1367(a) for claims arising under the NYSHRL and the NYCHRL, based on supplemental jurisdiction over claims that arise from a common nucleus of operative fact and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

7.      Plaintiffs have fully complied with all prerequisites to jurisdiction in this Court under Title VII.

8.      The instant action is founded on charges filed with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") by Plaintiffs in or about February 2013 (EEOC Charge No. 520-2013-01073).

9.      The EEOC advised Plaintiffs that, since the entity that allegedly engaged in discriminatory conduct was a public sector employer, the Notice of Right to Sue must be issued by the United States Department of Justice (hereinafter "DOJ").

10.     On April 14, 2014, the DOJ issued Plaintiffs the Notice of Right to Sue.

11.     This lawsuit is commenced within ninety (90) days of Plaintiffs' receipt of this notice from the DOJ.

## PARTIES

12.     Plaintiff ADW/DWA is a certified and recognized public employee organization, pursuant to the New York City Collective Bargaining Law (New York City Administrative

2876369.1

Code, Title 12, Chapter 3) (hereinafter "NYCCBL") § 12-303(j) and (l), representing Defendant DOC employees within the civil service ranks of Assistant Deputy Warden/Warden Level I (hereinafter "ADW"), Deputy Warden/Warden Level II (hereinafter "DW"), and Deputy Warden-in-Command/Warden Level II (hereinafter "DWIC"), (collectively, DWs and DWICs, unless specifically delineated herein, shall be referred as "DW").

13.     DWs and DWICs are analogous in pay parity and duties to the ranks of Captain and Deputy Inspector within the New York City Police Department (hereinafter "NYPD), as well as the ranks of Battalion Chief and Deputy Chief within the New York City Fire Department (hereinafter "FDNY").

14.     Between 80 and 90 percent of DWs are females and minorities, such as Hispanic-Americans, African-Americans, and Asian-Americans.

15.     Plaintiff ADW Schwartzbaum has been employed by Defendant DOC since February 13, 1979, has held the rank of ADW since June 10, 1988, and has served as the duly-elected President of the ADW/DWA since April 1997.

16.     Plaintiff ADW Schwartzbaum resides at 300 Loretto Street, Staten Island, County of Richmond, State of New York, 10307.

17.     Plaintiff DW Walton, who is an African-American female, has been employed by Defendant DOC since September 1984, has held the rank of DW since May 2007, and previously held the duly-elected position of Deputy Warden Representative on the Union's Executive Board from January 2012 to December 31, 2013.

18.     Plaintiff DW Walton resides at 16-70 Bell Boulevard, # 509, Bayside, County of Queens, State of New York, 11360.

2876369.1

19.     Plaintiff DW Batson, who is an African-American male, was employed by Defendant DOC from January 1984 until his retirement on April 2, 2013, and he held the rank of DW from August 2006 through the date of his retirement.

20.     Plaintiff DW Batson resides at 49 Ford Drive West, East Massapequa, County of Nassau, State of New York, 11758.

21.     Plaintiff DW Ross, who is an African-American female, was employed by Defendant DOC from June 1984 to April 2011, and she held the rank of DW from September 2001 until her retirement.

22.     Plaintiff DW Ross currently resides at 1401 Ocean Avenue, Brooklyn, County of Kings, State of New York, 11230.

23.     Plaintiff DW Diaz, who is a Hispanic male, has been employed by Defendant DOC since May 1987, and has held the rank of DW since February 2005.

24.     Plaintiff DW Diaz resides at 163-29 15th Drive, Whitestone, County of Queens, State of New York, 11357.

25.     Defendant City is a municipal corporation duly organized and existing under the laws of the State of New York, is an employer as defined by Title VII, the NYSHRL, and the NYCHRL, is a "person" for purposes of enforcement of the rights guaranteed under 42 U.S.C. §§ 1981 and 1983, is a public employer as defined by NYCCBL § 12-303(g), and was or is the employer of Defendants deBlasio and Ponte.

26.     Defendant DOC is a department, agency, bureau and/or subdivision of Defendant City, is responsible for, *inter alia*, providing services in connection with jails and detention facilities maintained within the five boroughs, is a local government agency of Defendant City,

5

was or is the employer of Plaintiffs, and is a municipal agency of the City as defined by NYCCBL § 12-303(d).

27.     Defendant de Blasio is the Mayor of Defendant City and the chief policymaking official for Defendant City and its departments, including Defendant DOC, and upon information and belief, Defendant deBlasio routinely meets with the officials from Defendant DOC and is aware of the discriminatory practices complained of herein that have adversely affected Plaintiffs.

28.     Defendant Ponte is Defendant DOC's Commissioner, is an employee of Defendant City and is the principal administrator of Defendant DOC, is responsible for the institution and application of Defendant DOC's policies, and is charged with ensuring that the actions of Defendant DOC do not deprive any individual of the rights secured by the Constitution and laws of the United States, as well as the Constitution and laws of the State and City of New York.

## ALLEGATIONS OF FACT

### Representational and Contractual History

29.     Pursuant to an accretion petition, dated July 30, 1991, filed by the Union, DWs elected to be represented by the Union and joined the existing represented rank of ADW. *See generally Assistant Deputy Wardens*, 50 OCB 8 (BOC 1992); *Assistant Deputy Wardens*, 56 OCB 11 (BOC 1995); *Assistant Deputy Wardens*, 56 OCB 21 (BOC 1995) (this trilogy of cases, respectively, denied the City's motion to dismiss the Union's representation petition, found that DWs were not statutorily excluded from bargaining under the managerial/confidential exception under the NYCCBL, and certified the results of the 1995 membership election).  Annexed hereto

6

as Exhibit A are copies of the above-referenced trilogy of representation decisions issued by the New York City Board of Certification.

30.     Upon being accreted into the existing bargaining unit, the Union and City negotiated an agreement which addressed a number of terms and conditions of employment for DWs, and dealt with the incorporation of the DWs into the existing bargaining unit with ADWs. Annexed hereto as Exhibit B is a copy of the supplemental agreement incorporating DWs into the then-current collective bargaining agreement between the ADWs and City.

31.     Unless otherwise amended therein, this supplemental agreement allowed for DWs to enjoy the same rights and benefits contained in the then-current collective bargaining agreement between the ADWs and the City.

32.     One of the issues that should have been addressed by the parties in this supplemental agreement was overtime and compensatory time because DWs, similar to Captains and Deputy Inspectors in the NYPD and Battalion Chiefs and Deputy Chiefs in the FDNY, can only receive compensatory time (hereinafter "Comp Time") for any and all overtime hours worked; nevertheless, this supplemental agreement was silent on the issues of use and accrual of Comp Time.

33.     Subsequent to the initial incorporation of DWs into the Union, the parties entered into a series of collective bargaining agreements.

34.     The most recent collective bargaining agreement, which covered the period from March 1, 2008 to June 30, 2012, is currently in *status quo* (hereinafter "Agreement" or "CBA"). Annexed hereto as Exhibit C is a copy of the Agreement.

35.     Pursuant to Article III § 1 of the Agreement, overtime worked by DWs:

shall be compensated for in compensatory time off at the rate of time and one-half
when such overtime is ordered by the Commissioner, or the Chief of Department,

7

N.Y.C. Department of Correction, or their designee, or is performed during an emergency without prior approval and when requests for compensation therefor after performance of such overtime are forwarded through channels together with recommendations and are approved by the Chief of the Department, or designee, for such purpose.

36.    Prior to the accretion of the DWs into the Union, the City had viewed DWs as "managerial/confidential", meaning that they could not collectively bargain over wages, hours, and other terms and conditions of employment, as defined by the NYCCBL § 12-309(c)(4).

37.    The "managerial/confidential" status of DWs became null and void because of the accretion of DWs into the Union. (*See* Exs. A and C).

**Discriminatory Operational Limitations**

38.    Within Defendant DOC, one of the differences between unionized and "managerial/confidential" employees was that "managerial/confidential" employees had a one-year cap on the cash payment of terminal leave benefits at retirement, which are comprised of the combination of accrued Comp Time, annual leave, and terminal leave.

39.    Another example of the difference between unionized and "managerial/confidential" employees was the internal regulatory limitation, set forth by Defendant DOC, with respect to its employees' working of overtime.

40.    Specifically, Directive 4250R, entitled "Overtime Limitations and Controls/Uniformed Employees," sets forth the agency's limitations on the amount of overtime worked by uniformed employees in the ranks of Correction Officer, Correction Captain, and ADW.

41.    Directive 4250R specifically states that employees in the ranks of Correction Officer, Correction Captain, and ADW are limited to a set number of overtime hours per month and per year, provides guidelines for the maximum number of hours that individuals in these

8

ranks may work, and allows for the employees in these ranks to be remunerated for overtime in cash or Comp Time, unlike DWs who are limited to earned overtime remunerated in Comp Time only.

42.     However, unlike the ranks of Correction Officer, Correction Captain, and ADW, Directive 4250R does not similarly limit the number of overtime hours that DWs can work during any month or during the year as a whole.

43.     Further exacerbating the issue of an increasing amount of overtime, the rank of DW has experienced, and continues to experience, a workload problem because this rank has been severely understaffed.

44.     Defendant DOC failed to promote any ADWs into the rank of DW from June 20, 2007 to June 21, 2010, which led to a dearth in staffing levels in the ranks of DW and DWIC.[1]

45.     Moreover, DWs serve as Commanding Officers of specialized departmental units and are assigned various jail facility disciplines, such as Deputy Warden for Security, Deputy Warden for Program Services, Deputy Warden for Administration, and/or Deputy Warden for Facility Operations.

46.     DWs have been historically assigned to two and sometime three disciplines simultaneously, thereby increasing their workloads and directly increasing their amount of earned overtime hours which have no limit and can only be paid as Comp Time.

47.     As a result of the insufficient level of staffing, DWs typically worked between 10 and 14 hours per shift, thereby accruing two to six hours of overtime per shift.

---

[1]     ADW Emilio Pennes was promoted to the rank of DW during that period of time, but only received such promotion pursuant to a Stipulation of Settlement in a case he initiated against Defendants City and DOC by the United States Department of Justice for alleged violations of the Uniformed Services Employment and Reemployment Rights Act.

48.     Despite this fact, with regard to the DWs, Defendants discriminatorily decided to maintain the one-year-cap on the payment of terminal leave benefits (hereinafter "one-year cap").

49.     As such, Defendants established an untenable and discriminatory system whereby DWs' workload required, and continues to require, them to work an inordinate number of overtime hours, but ultimately only receive remuneration for one year's worth of those overtime hours and/or annual leave combined, upon their respective retirement from service.

50.     Individuals from Defendant City have testified that the one-year cap on the payment of terminal leave benefits is a policy that affects all uniformed unions in the City, and the City has indicated that the origin of its applications of said policy flows back to a mayoral executive order from four decades ago.

51.     Specifically, Nicholas Santangelo, Defendant DOC's Director of Labor Relations, indicated that the one-year cap on the remuneration of Comp Time is a citywide policy, and affects all employees of Defendant City.

52.     However, despite these contentions, it is unrefuted that DWs are the only bargaining unit members that cannot receive overtime payments in the form of cash, and that are not fully compensated for all their time worked for Defendant DOC, upon retirement from service.

53.     Amongst the employees in the rank of DW, there are a significant number of individuals who have accrued over one-year of just Comp Time alone.

**Prior Litigation**

54.     On or about June 10, 2009, the Union filed with the New York City Office of Collective Bargaining (hereinafter "OCB") a Request for Arbitration alleging a violation of

2876369.1

Article III § 1 of the Agreement; another Request for Arbitration was filed with the OCB on or about December 17, 2009 alleging a violation of Article XI §§ 1(a) – (g), 2, 3, and 4 of the Agreement.

55.     Defendant DOC, in its defense to the Requests for Arbitration, averred that Regulation 3.10.160 governed "annual leave allowances for all employees" and allowed Defendant DOC to refuse to pay DWs for any accrued Comp Time, annual leave or terminal leave that exceeded one year.  Annexed hereto as Exhibit D is a copy of Regulation Chapter 3.

56.     Further, Regulation 3.10.160(E) states:

> Any employee who as of January 1, 1995 or for civilian employees who as of January 1, 2975 having a minimum of fifteen (15) years of service, may elect to receive terminal leave with pay upon retirement not to exceed one (1) month for every ten years of service pro-rated for a fractional part thereof.  The character of the service rendered and the manner and extent use of sick leave by the employees will be considered for uniformed personnel.  The total paid to any employee, upon termination of services or upon retirement, for accrued annual leave accrued overtime, and terminal leave granted in accordance with the provisions prescribed herein shall not exceed payment of twelve (12) months of service.  However, employees who are unclassified, not classified, pending classification, or in exempt position, and persons paid as consultants, shall not be paid for accumulated annual leave or overtime or accumulated sick leave, nor shall they be paid for terminal leave upon termination of services or upon retirement. (emphasis omitted).

57.     Despite Defendant DOC's proffered defense, the Union was able to rebut the application of this agency regulation with a Directive, addressing this precise issue, issued by the Comptroller for the City of New York.

58.     The New York City Comptroller, an independently elected official, is the Chief Financial Officer of the City of New York who is responsible for ensuring the financial health of the City of New York.

11

59.     The Comptroller manages assets of the pension funds, performs budgetary analysis, audits city agencies, registers proposed contracts, and makes recommendation on City programs and operations, fiscal policies, and financial transactions.

60.     On July 22, 2004, the Comptroller's office issued Directive 14, entitled "Leave Balance Payments" (hereinafter "Comptroller Directive 14"). Annexed hereto as Exhibit E is a copy of Directive 14.

61.     This regulation states, in pertinent part:

Time and leave regulations established by the Mayor entitle management employees to payment for unused accrued leave when they separate from City service, or when they transfer to a non-Mayoral agency that does not accept any or all of their total leave balances. Accrued leave may consist of annual, sick, vested, banked, and/or terminal leave and compensatory time. Payments are calculated based on many factors including pay plan (career and salary plan employees, managerial employees, uniformed force managers, or employees serving in Executive Positions), type of leave and length of service. The Directive addresses payments made to all employees who separate from City service or transfer to another City agency. (emphasis omitted).

62.     Furthermore, § 9.0 of Comptroller Directive 14, entitled "Annual Leave Accruals and Terminal Leave For Non-Managerial Employees," provides that "non-managerial employees are eligible to receive payment upon separation from City service, for annual leave, sick leave, and compensatory time balances", without limiting language of a one-year cap on such payments.

63.     Essentially, employees who intend on separating from service should notify the agency and arrange for the use of any outstanding leave balances, otherwise known as "burning time"; and these employees should remain on payroll until their leave balances are exhausted.

64.     Finally, this Directive indicates that it is subject to change based on the citywide labor agreements.

2876369.1

65.     The contractual dispute between the parties herein regarding the payment of accrued Comp Time for DWs proceeded to arbitration, before Arbitrator Deborah M. Gaines, Esq.

66.     During the course of seven arbitration hearings held between April 29, 2010 and May 23, 2011, testimony was received into evidence regarding Defendant DOC's application of Regulation 3.10.160(E).

67.     Defendant DOC's Director of Labor Relations Nicholas Santangelo previously testified that the application of the one-year cap constitutes a policy and procedure that applies to all members of uniformed unions in the City.

68.     Notwithstanding Director Santangelo's prior testimony, Phillip Seelig, a retired Defendant DOC employee who had been employed with the Defendant DOC for 21 years and who is a white male, testified that he stopped reporting to work in December 1992, but remained on the Defendant DOC payroll until March or April 1994, thereby exhausting approximately 15 months of accrued leave balances, including Comp Time.

69.     Furthermore, Director Santangelo attempted to explain Mr. Seelig's receipt of approximately 15 months of accrued leave by indicating that Mr. Seelig, who had been the President of the Correction Officers Benevolent Association, was a unique case.

70.     In the normal course of their business, Defendant DOC sends its prospective retiring DWs a "Waiver Letter." Annexed hereto as Exhibit F is a copy of a sample "Waiver Letter" issued by Defendant DOC to its DWs who intend to separate from service.

71.     This "Waiver Letter" authorizes the retiring DW to either refuse to waive any accrued leave time, including but not limited to Comp Time, or elect to waive a specified amount of such time.

13

2876369.1

72.     One of Defendant DOC's witnesses during the arbitration testified that DWs are given a choice, through this letter, to either waive or refuse to waive any accrued leave allowances owed to them upon retirement because the option is up to the employee.

73.     As such, even though Defendant DOC, in its defense against the Union's claims, contended that Regulation 3.10.160(E) was always uniformly applied, the reality of this issue reveals examples of an inconsistent application of parts of this regulation within Defendant DOC.

74.     Defendant DOC has chosen to ignore other provisions in its Regulation 3.10.160(E), which benefitted its employees who were white males; namely, the prohibition on the payment of accumulated leave time, such as Comp Time, to the First Deputy Commissioner position, which is an exempt position, within Defendant DOC, upon separation from service.

75.     For the last 25 years, Defendant DOC has paid accumulated leave, such as Comp Time, to the First Deputy Commissioners within Defendant DOC, upon their respective separations from service, and all of these individuals have been white males; but all have been classified as exempt employees.

76.     Further, Defendant DOC's imposition of the one-year cap to DWs indicates that this Department ran afoul of its own argument that the one-year cap was a citywide policy, as well as the NYC Comptroller Directive 14, which mandates that all unionized, uniformed City employees should remain on payroll until their respective leave balances, including but not limited to Comp Time, are exhausted.

77.     In addition to the evidence and testimony regarding Defendant DOC's inequitable application of Regulation 3.10.160(E) and the Comptroller Directive 14, as well as the testimony concerning the inconsistent application by Defendant DOC of its own regulations, multiple

14

2876369.1

witnesses further testified regarding how other uniformed agencies within the City dealt with the payment of accrued Comp Time that exceeded one year to retiring employees.

78.     Retired-NYPD Captain Thomas DePrisco, a white male, testified that he exhausted his accrued leave allowances from June 2003 to July 2005, which equaled over two years of accrued leave before officially retiring from the NYPD.

79.     Retired-FDNY Deputy Chief Patrick Savage testified that he began exhausting his accrued leave balances in April 2008 and he retired in May 2010; as such, he was remunerated for over two years of accrued leave balances.

80.     Retired-NYPD Inspector Richard Graff, a member of the NYPD for over 43 years, testified that he exhausted 14 months of accrued leave balances.

81.     By contrast, retired-NYPD Inspector Graf further testified that employees in the rank of Assistant Chief within the NYPD are "managerial/confidential," and as such, are not entitled to exhaust leave balances; rather "they're entitled to a one-time payment of unused time up to a maximum of one year" because they are considered "managerial" employees by the City.

82.     Yet, despite this overwhelming testimonial evidence, Defendant DOC insisted that the one-year cap was a citywide policy, applicable to all City agencies and departments, which, in their estimation, was proper justification for stealing earned overtime hours from DWs and refusing to remunerate DWs for accrued Comp Time, as well as vacation time and terminal leave.

83.     On July 11, 2012, the Union received Arbitrator Gaines's Opinion and Award, dated July 10, 2012.

15

2876369.1

84.     Arbitrator Gaines framed the issue as whether application of Regulation 3.10.160(E) violated Article III § 1 of the Agreement and/or Article XI §§ 1(a) – (g), 2, 3, and 4 of the Agreement.

85.     Arbitrator Gaines held that the application of this regulation did not violate the relied-upon provisions of the CBA, and therefore denied the Union's grievances.

86.     As a procedural matter in furtherance of the instant litigation, Plaintiffs filed a Notice of Claim with Defendants on or about September 21, 2012.

**Discriminatory Impact**

87.     The one-year-cap is not implemented in other City uniformed agencies, such as the New York City Police Department and/or the New York City Fire Department, where employees in the appropriate, corresponding supervisory ranks are remunerated for all accrued Comp Time, vacation time, and terminal leave.

88.     DWs are analogous in pay parity and duties to the ranks of Captain and Deputy Inspector within the New York City Police Department, as well as the ranks of Battalion Chief and Deputy Chief within the New York City Fire Department.

89.     Upon information and belief, employees working in the ranks of Captain and Deputy Inspector within the New York City Police Department and/or Battalion Chief and Deputy Chief within the New York City Fire Department generally do not fall within the status of a protected class, as recognized by applicable federal and state anti-discrimination statutes.

90.     Essentially, Defendants' limitation has the practical effect of depriving DWs out of remuneration for the overtime work that they performed, and essentially allowing Defendant DOC to have DWs work for free because these employees cannot exhaust and/or utilize all of the

16

accrued Comp Time they have compiled over their respective careers to under one-year's worth of accrued Comp Time.

91.     Additionally, the institution of the one-year cap has the discriminatory impact of penalizing a largely, minority-based work force from receiving payment for overtime worked, while their counterparts in other City uniformed agencies that are not populated by a largely, minority-based work force, do receive such appropriate remuneration.

92.     In fact, as a result of the one-year cap, DWs are the only unionized, uniformed force employees in the City that are not compensated for all overtime hours worked upon retirement.

93.     As a consequence of the one-year cap, retiring DWs are forfeiting hundreds of thousands of dollars in overtime pay, in the form of Comp Time.

94.     For example, Plaintiffs Batson and Diaz, who are currently in the process of retiring from Defendant DOC, will have to forfeit approximately six to eight months of Comp Time.

95.     For an additional example, Plaintiff Walton who, if she were to retire, would be adversely affected by the one-year cap and be similarly forced to forfeit accrued Comp Time.

96.     For a further example, Plaintiff Ross retired from Defendant DOC and was forced to forfeit all accrued leave that exceeded the one-year cap, including her earned Comp Time, which amounted to 11 months of time and approximately $150,000.00.

**Exhaustion of Administrative Remedies**

97.     The one-year cap was challenged initially through the parties' grievance/arbitration procedures contained in the Agreement.

17

98.     On or about July 10, 2012, the arbitrator assigned to adjudicate that matter wrongfully upheld Defendants' implementation of the one-year cap, but Arbitrator Gaines took no evidence into the record in those proceedings concerning the racial or gender demographics of the ADW/DWA, and more specifically the racial and gender demographics of DWs.

99.     Based upon this arbitration award, the instant claim accrued when the Union exhausted its administrative remedies under the Agreement, and Defendants continued to implement the one-year cap.

100.    On or about February 19, 2013, Plaintiffs, through counsel, filed a completed and executed Discrimination Complaint form with the Equal Employment Opportunity Commission (hereinafter "EEOC").  Annexed hereto as Exhibit G is a copy of the EEOC Discrimination Complaint form.

101.    On or about March 6, 2013, Plaintiffs, through counsel, filed a completed and executed Charge of Discrimination with the EEOC.  Annexed hereto as Exhibit H is a copy of the EEOC Charge of Discrimination.

102.    Shortly after the filing of these documents with the EEOC, Defendant DOC attempted to institute a new procedure by which DWs select and utilize their respective annual leave and Comp Time, which constituted a breach of their statutory obligation under the NYCCBL to negotiate in good faith concerning mandatory subjects of bargaining.

103.    On or about May 24, 2013, Defendants, through counsel, filed its answer to Plaintiffs' EEOC Discrimination Complaint form and EEOC Charge of Discrimination. Annexed hereto as Exhibit I is a copy of Defendants' response.

104.    On or about July 22, 2013, Plaintiffs, through counsel, filed its reply to Defendants' response.  Annexed hereto as Exhibit J is a copy of Plaintiffs' reply.

18

**Summation of Discriminatory Activity**

105.   As a result of Defendants' implementation of the one-year cap, retiring members of the Union have been required to forfeit portions of their accrued Comp Time, thereby forfeiting payment for overtime hours worked.

106.   The unilateral implementation of the one-year cap has a disparate impact on the largely, minority-based membership of the Union, such as Plaintiffs Walton, Batson, Ross and Diaz, and specifically the individuals in the ranks of DW and DWIC because these employees are prohibited from receiving monetary payment for overtime actually worked in service of the Defendant DOC.

107.   Furthermore, the unilateral implementation of the one-year cap disparately treats the largely, minority-based membership of the Union, such as Plaintiffs Walton, Batson, Ross, and Diaz, and specifically the individuals in the ranks of DW and DWIC because these employees are being treated in a less favorable manner than employees in other City uniformed agencies that are not populated by a largely-minority based work force.

108.   Additionally, the inequitable application and implementation of the appropriate rules and regulations by Defendants have directly and indirectly adversely affected each and every member of the Union, including but not limited to Plaintiffs.

109.   Based upon the foregoing, the members of the ADW/DWA who are adversely affected by the one-year cap should receive all proper remuneration for the accrued and unused Comp Time, vacation, and terminal leave they possess upon their retirement from service.

**FIRST CAUSE OF ACTION**
**DISPARATE TREATMENT AND IMPACT**

110.   Plaintiffs repeat and reallege Paragraphs 1 through 109 of the Complaint as if fully set forth herein.

19

111. Pursuant to Title VII, a *prima facie* case is alleged if: i) Plaintiffs demonstrate that they are members of a protected class; ii) Plaintiffs demonstrate that Defendants knew or had reason to know that Plaintiffs are members of a protected class; iii) Plaintiffs were caused to suffer from an adverse employment action effectuated by Defendants; iv) Defendants effectuated said adverse employment action as a result of Plaintiffs membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

112. Additionally, claims of disparate treatment are demonstrated when Plaintiff are "able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Raskin v. Wyatt Co.,* 125 F.3d 55 (2d Cir. 1997).

113. Between 80 and 90 percent of DWs are females and minorities, such as Hispanic-Americans, African-Americans, and Asian-Americans.

114. As dictated by case law, Hispanic-Americans, African-Americans, Asian-Americans, and females are considered to be members of a protected class. *See Silva v. Peninsula Hotel*, 509 F.Supp.2d 364 (S.D.N.Y. 2007); *Grimes v. Fremont Gen. Corp.*, 785 F.Supp.2d 269 (S.D.N.Y. 2011); *Valenti v. Massapequa Union Free Sch. Dist.*, 2010 Dist. LEXIS 10076 (E.D.N.Y. 2010).

115. Plaintiffs were entitled to compensation and remuneration for the overtime hours worked and the Comp Time and vacation they respectively accrued.

116. As per Defendants' actions detailed above, Plaintiffs are not compensated and remunerated for the overtime hours worked and the Comp Time they respective accrue, which constitutes an adverse employment action. *See Serrano v. N.Y. State Dept. of Envtl. Conservation*, 2013 U.S. Dist. LEXIS 178939 (N.D.N.Y. 2013).

2876369.1

117.    Plaintiffs were caused to suffer from the above-stated adverse employment action as a result of their respective membership in a protected class. *See Noble v. Career Educ. Corp.*, 2009 U.S. Dist. LEXIS 68318 (S.D.N.Y. 2009); *Boykin v. KeyCorp.* 521 F.3d 202 (2d Cir. 2007); *Berl v. Co. of Westchester*, 849F.2d 712 (2d Cir. 1988).

118.    Plaintiffs are the only bargaining unit members that are not being compensated for all overtime earned and who cannot receive cash payments for overtime worked, and Plaintiffs are the only bargaining unit that consists of 80 to 90 percent members of a protected class(es).

119.    Unlike members of other bargaining units that encompass the ranks of Captain and Deputy Inspector within the NYPD and the ranks of Battalion Chief and Deputy Chief within the FDNY, DWs are subjected to the one-year cap because the Union's demographics demonstrate that they are predominantly members of a protected class(es).

120.    Moreover, Defendant DOC's attempt to unilaterally change the manner and method by which DWs select and utilize their respective annual leave and Comp Time constituted a retaliatory action, which is further violative of the provisions of the law cited herein.

121.    Based upon the foregoing, and given the fact that Plaintiffs have satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiffs have sufficiently alleged that DWs were subjected to discriminatory employment practices, namely the imposition of the one-year cap, and said imposition was caused by and/or resulted from Plaintiffs' membership in protected class(es).

## SECOND CAUSE OF ACTION
## EQUAL PROTECTION UNDER THE LAW

122.    Plaintiffs repeat and reallege Paragraphs 1 through 121 of the Complaint as if fully set forth herein.

21

123.    Pursuant to 42 U.S.C. § 1981:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

124.    Pursuant to 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

125.    Causes of actions alleging violations of 42 U.S.C. §§ 1981 and 1983 are treated in a similar manner as causes of actions alleging violations of Title VII. *See Hall v. N.Y. City Dept. of Transp.*, 701 F.Supp.2d 318 (E.D.N.Y. 2010).

126.    Pursuant to 42 U.S.C. §§ 1981 and 1983, a *prima facie* case is alleged if:  i) Plaintiffs demonstrate that they are members of a protected class; ii) Plaintiffs demonstrate that Defendants knew or had reason to know that Plaintiffs are members of a protected class; iii) Plaintiffs were caused to suffer from an adverse employment action effectuated by Defendants; iv) Defendants effectuated said adverse employment action as a result of Plaintiffs membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

22

2876369.1

127.    Between 80 and 90 percent of DWs are females and minorities, such as Hispanic-Americans, African-Americans, and Asian-Americans.

128.    As dictated by case law, Hispanic-Americans, African-Americans, Asian-Americans, and females are considered to be members of a protected class. *See Silva v. Peninsula Hotel*, 509 F.Supp.2d 364 (S.D.N.Y. 2007); *Grimes v. Fremont Gen. Corp.*, 785 F.Supp.2d 269 (S.D.N.Y. 2011); *Valenti v. Massapequa Union Free Sch. Dist.*, 2010 Dist. LEXIS 10076 (E.D.N.Y. 2010).

129.    Plaintiffs are entitled to compensation and remuneration for the overtime hours worked and the Comp Time and vacation they respectively accrued.

130.    As per Defendants' actions detailed above, Plaintiffs are not compensated and remunerated for the overtime hours worked and the Comp Time they respectively accrue, which constitutes an adverse employment action. *See Serrano v. N.Y. State Dept. of Envtl. Conservation*, 2013 U.S. Dist. LEXIS 178939 (N.D.N.Y. 2013).

131.    Plaintiffs were caused to suffer from the above-stated adverse employment action as a result of their respective membership in a protected class. *See Noble v. Career Educ. Corp.*, 2009 U.S. Dist. LEXIS 68318 (S.D.N.Y. 2009); *Boykin v. KeyCorp.* 521 F.3d 202 (2d Cir. 2007); *Berl v. Co. of Westchester*, 849F.2d 712 (2d Cir. 1988).

132.    Plaintiffs and all DWs are the only bargaining unit members that are not compensated for all overtime hours worked and earned, with the limitation of receiving only compensatory time for overtime worked.

133.    Unlike members of other bargaining units that encompass the ranks of Captain and Deputy Inspector within the NYPD and the ranks of Battalion Chief and Deputy Chief within the FDNY, DWs are subjected to the one-year cap.

23

2876369.1

134.     Moreover, Defendant DOC's attempt to unilaterally change the manner and method by which DWs select and utilize their respective annual leave and Comp Time constituted a retaliatory action, which is further violative of the provisions of the law cited herein.

135.     Based upon the foregoing, Plaintiffs have sufficiently alleged that Defendants have violated 42 U.S.C. §§ 1981 and 1983 by subjecting DWs to the imposition of the one-year cap.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL**

136.     Plaintiffs repeat and reallege Paragraphs 1 through 135 of the Complaint as if fully set forth herein.

137.     Pursuant to NYSHRL § 290:

> The legislature hereby finds and declares that the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants. A division in the executive department is hereby created to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; and the division established hereunder is hereby given general jurisdiction and power for such purposes.

24

138.    Pursuant to NYSHRL § 296:

> For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

139.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997).

140.    Pursuant to NYSHRL §§ 290 and 296, a *prima facie* case is alleged if: i) Plaintiffs demonstrate that they are members of a protected class; ii) Plaintiffs demonstrate that Defendants knew or had reason to know that Plaintiffs are members of a protected class; iii) Plaintiffs were caused to suffer from an adverse employment action effectuated by Defendants; iv) Defendants effectuated said adverse employment action as a result of Plaintiffs membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

141.    Additionally, claims of disparate treatment are demonstrated when Plaintiff are "able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Raskin v. Wyatt Co.,* 125 F.3d 55 (2d Cir. 1997).

142.    Between 80 and 90 percent of DWs are females and minorities, such as Hispanic-Americans, African-Americans, and Asian-Americans.

143.    As dictated by case law, Hispanic-Americans, African-Americans, Asian-Americans, and females are considered to be members of a protected class. *See New York State Div. of State Police v. McCall*, 98 A.D.2d 921 (3rd Dept. 1983); *Nelson v. HSBC Bank USA*, 41 A.D.3d 445 (2d Dept. 2007); *Yee Sing Li v. Educ. Broadcasting Corp.*, 2011 N.Y. Slip Op.

2876369.1

31953(U) (Sup. Ct. N.Y. Co. June 5, 2011); *People v. N.Y. City Transit Auth.*, 59 N.Y.2d 343 (1983).

144.    Plaintiffs were entitled to compensation and remuneration for the overtime hours worked and the Comp Time and vacation they respectively accrued.

145.    As per Defendants' actions detailed above, Plaintiffs are not compensated and remunerated for the overtime hours worked and the Comp Time they respective accrue, which constitutes an adverse employment action. *See Valcarcel v. First Quality Maintenance*, 41 Misc.3d 1222(A) (Sup. Ct. Queens Co. October 15, 2013).

146.    Plaintiffs were caused to suffer from the above-stated adverse employment action as a result of their respective membership in a protected class. *See Noble v. Career Educ. Corp.*, 2009 U.S. Dist. LEXIS 68318 (S.D.N.Y. 2009); *Boykin v. KeyCorp.* 521 F.3d 202 (2d Cir. 2007); *Berl v. Co. of Westchester*, 849F.2d 712 (2d Cir. 1988).

147.    Plaintiffs are the only bargaining unit that has been limited in the payment for all overtime hours earned and worked, and cannot receive cash payments for overtime worked, and Plaintiffs are the only bargaining unit that consists of 80 to 90 percent members of a protected class(es).

148.    Unlike members of other bargaining units that encompass the ranks of Captain and Deputy Inspector within the NYPD and the ranks of Battalion Chief and Deputy Chief within the FDNY, DWs are subjected to the one-year cap because the Union's demographics demonstrate that they are predominantly members of a protected class(es).

149.    Moreover, Defendant DOC's attempt to unilaterally change the manner and method by which DWs select and utilize their respective annual leave and Comp Time

2876369.1

constituted a retaliatory action, which is further violative of the provisions of the law cited herein.

150.    Based upon the foregoing, and given the fact that Plaintiffs have satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiffs have sufficiently alleged that DWs were subjected to discriminatory employment practices, namely the imposition of the one-year cap, and said imposition was caused by and/or resulted from Plaintiffs' membership in protected class(es).

## FOURTH CAUSE OF ACTION
## VIOLATIONS UNDER THE NYCHRL

151.    Plaintiffs repeat and reallege Paragraphs 1 through 150 of the Complaint as if fully set forth herein.

152.    NYCRHL § 8-101, *et seq*. proscribes discrimination based on race, national origin, and gender, *inter alia*, as it relates to employers and employees.

153.    NYCHRL § 8-107(1)(a) states that it shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, to discriminate against an employee with respect to compensation.

154.    In order to establish a *prima facie* claim under this cause of action, it must be alleged that: i) Plaintiffs demonstrate that they are members of a protected class; ii) Plaintiffs demonstrate that Defendants knew or had reason to know that Plaintiffs are members of a protected class; iii) Plaintiffs were caused to suffer from an adverse employment action effectuated by Defendants; iv) Defendants effectuated said adverse employment action as a result of Plaintiffs membership in a protected class.    *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

27

2876369.1

155. Between 80 and 90 percent of DWs are females and minorities, such as Hispanic-Americans, African-Americans, and Asian-Americans.

156. As dictated by case law, Hispanic-Americans, African-Americans, Asian-Americans, and females are considered to be members of a protected class. *See New York State Div. of State Police v. McCall*, 98 A.D.2d 921 (3rd Dept. 1983); *Nelson v. HSBC Bank USA*, 41 A.D.3d 445 (2d Dept. 2007); *Yee Sing Li v. Educ. Broadcasting Corp.*, 2011 N.Y. Slip Op. 31953(U) (Sup. Ct. N.Y. Co. June 5, 2011); *People v. N.Y. City Transit Auth.*, 59 N.Y.2d 343 (1983).

157. Plaintiffs were entitled to compensation and remuneration for the overtime hours worked and the Comp Time and vacation they respectively accrued.

158. As per Defendants' actions detailed above, Plaintiffs are not compensated and remunerated for the overtime hours worked and the Comp Time they respective accrue, which constitutes an adverse employment action. *See Valcarcel v. First Quality Maintenance*, 41 Misc.3d 1222(A) (Sup. Ct. Queens Co. October 15, 2013).

159. Plaintiffs were caused to suffer from the above-stated adverse employment action as a result of their respective membership in a protected class. *See Jacobsen v. N.Y. City Health and Hosp. Corp.*, 2014 N.Y. Slip Op. 2098 (2014).

160. Plaintiffs are the only bargaining unit that has been limited in the payment of overtime hours worked and earned and cannot receive cash payments for overtime worked, and Plaintiffs are the only bargaining unit that consists of 80 to 90 percent members of a protected class(es).

161. Unlike members of other bargaining units that encompass the ranks of Captain and Deputy Inspector within the NYPD and the ranks of Battalion Chief and Deputy Chief

28

within the FDNY, DWs are subjected to the one-year cap because the Union's demographics demonstrate that they are predominantly members of a protected class(es).

162. Moreover, Defendant DOC's attempt to unilaterally change the manner and method by which DWs select and utilize their respective annual leave and Comp Time constituted a retaliatory action, which is further violative of the provisions of the law cited herein.

163. Based upon the foregoing, Plaintiffs have sufficiently alleged that DWs were subjected to discriminatory employment practices, namely the imposition of the one-year cap, and said imposition was caused by and/or resulted from Plaintiffs' membership in protected class(es).

## STATEMENT OF CLAIM FOR RELIEF

164. By the actions and omissions described above, Defendants have violated, and continue to violate Title VII, 42 U.S.C. §§ 1981 and 1983, NYSHRL §§ 290 and 296, and NYCRHL § 8-101, *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will:

- Order that Defendants immediately reimburse, and make whole all adversely affected DWs who have been harmed by the imposition of the one-year cap, including but not limited to the following relief:  back pay with interest and benefits, and all appropriate pension adjustments;

- Award compensatory damages to Plaintiffs for the pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood

2876369.1

endured by Plaintiffs in amounts that are fair, just and reasonable, to be determined at trial;

• Award Plaintiffs punitive damages in an amount to be determined at trial;

• Award Plaintiffs all reasonable attorneys' fees and costs, including expert fees, of this action and ensuring compliance with any order for injunctive relief, as provided for in 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k); and

• Grant Plaintiffs such other and further relief as the Court deems appropriate and equitable, as may be required in the interest of justice.

Dated: East Meadow, New York
          July 14, 2014

                              CERTILMAN BALIN ADLER & HYMAN, LLP.

                              By: _____
                                   PAUL S. LINZER, ESQ. (PL 0575)
                                   JENNIFER A. BENTLEY, ESQ. (JB 7146)
                                   STEPHEN MC QUADE, ESQ. (SM 6995)
                                   Attorneys for Plaintiffs
                                   90 Merrick Avenue, 9th Floor
                                   East Meadow, New York 11554
                                   516-296-7182
                                   Fax: 516-296-7111
                                   plinzer@certilmanbalin.com
                                   jbentley@certilmanbalin.com
                                   smcquade@certilmanbalin.com

2876369.1