UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ASSISTANT DEPUTY WARDENS/
DEPUTY WARDENS ASSOCIATION,
for itself and on behalf of its members;
SIDNEY SCHWARTZBAUM, as
President of the Assistant Deputy
Wardens/Deputy Wardens Association;
PAMELA WALTON, MERVIN O.
BATSON, BRENDA ROSS AND
WILLIAM DIAZ, individually and on
behalf of all similarly situated members of
the Assistant Deputy Wardens/Deputy
Wardens Association,

**MEMORANDUM AND ORDER**
14-CV-4308 (FB) (JO)

     Plaintiffs,

 -against-

THE CITY OF NEW YORK; THE NEW
YORK CITY DEPARTMENT OF
CORRECTION; MAYOR WILLIAM DE
BLASIO and NEW YORK CITY
DEPARTMENT OF CORRECTION
COMMISSIONER JOSEPH PONTE, in
their individual and official capacities,

     Defendants.
------------------------------------------------------x

*Appearances:*
*For the Plaintiffs:*
PAUL S. LINZER, ESQ.
STEPHEN MCQUADE, ESQ.
Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554

*For the Defendants:*
ZACHARY W. CARTER, ESQ.
Corporation Counsel for the City of
New York
STEPHEN P. PISCHL, ESQ.
Assistant Corporate Counsel
100 Church Street, Rm 2-142
New York, New York 10007

**BLOCK, Senior District Judge:**

Defendants move to dismiss plaintiffs' complaint under FRCP 12(b)(6) on the grounds of *res judicata* and for failure to state a claim. The court holds that *res judicata* is not applicable and plaintiffs' disparate-impact discrimination claims survive.

## BACKGROUND

This litigation marks the third attempt by plaintiff Assistant Deputy Wardens/Deputy Wardens Association ("DWA") to obviate the application of a rule promulgated by the defendant New York City Department of Correction ("DOC")–Rule 3.10.160(E)–which places a one-year cap on compensation for accumulated compensatory time for all of DOC's employees, including those represented by the DWA, upon the termination of their employment.[1]

**The First Attempt**

The first attempt arose in an arbitration proceeding between the DWA, on behalf of its members, and the defendants City of New York and the DOC, pursuant to their Collective Bargaining Agreement (the "CBA"). There, in denying a grievance brought by the DWA challenging the application of the Rule to DWA employees, the arbitrator,

---

[1] DOC Rule 3.10.160(E) provides in relevant part: "the total paid to any employee upon termination of services or upon retirement, for accrued annual leave, accrued overtime and terminal leave granted in accordance with the provision prescribed herein shall not exceed payment of twelve (12) months of service."

as a matter of contract interpretation, held that the Rule was "made part of the labor agreement by virtue of the grievance procedure;" thus "the [DOC] did not violate [the CBA] when it applied [the Rule]." ECF No.32-1 (Arbitration Award), at 17, 19. The arbitrator noted, however, that the DWA raised a "serious challenge to the applicability of the rule based on [matters of] equity." *Id.* at 17. She found that deputy wardens were working an increased number of overtime hours, were assigned more than one discipline, and were working 10-14 hour days. Regardless, the arbitrator was "constrained" to limit her authority to the resolution of the grievance under the CBA.

**The Second Attempt**

The DWA brought an Article 75 proceeding in the New York Supreme Court to vitiate the arbitrator's award under CPLR 7511(b)(1)(iii) on the ground that it "was irrational and against public policy." ECF No. 32-3 (N.Y. Supreme Court Decision), at 5. The court disagreed, noting that "[t]he Court of Appeals has held this subsection is only applicable where the arbitrator's award 'is *totally* irrational or violative of a *strong* public policy and thus in excess of the arbitrator's powers." *Id.* at 6 (citation omitted) (emphasis added). In finding the award not to be irrational, the court simply held that "[w]hile Deputy Wardens would have preferred a different result, the CBA did not compel one." *Id.* at 8.

Turning to the public policy issue, the court first correctly articulated the

applicable standard: "[t]o vacate the award, petitioner must show, *without engaging in extended factfinding or legal analysis* that an identifiable public policy exists, embodied in statute or decisional law, which prohibited the arbitrator [], *in an absolute sense.*" *Id.*(alteration in original) (emphasis added) (quoting *Matter of Selman v. State of New York Dept. Of Correctional Servs.*, 773 N.Y.S.2d 364, 364 (1st Dept. 2004)). The DWA argued that capping compensatory time upon retirement "violate[d] the strong public policy that employees receive remuneration for all overtime worked" under "the Fair Labor Standards Act, as well as State and City labor laws." *Id.* The court held, however, that those laws did not reflect a public policy "that prohibited [the arbitrator] from reaching the decision that she reached." *Id.*

**The Third Attempt**

Ever resourceful, the DWA has now brought the present federal lawsuit, trotting out yet different reasons for vitiating the arbitrator's award. It now alleges that the cap embodied in Rule 3.10.160(E) discriminates against the DWA's members under Title VII, 42 U.S.C §2000e, et seq., and comparable State and City statutes, as well as under section 1981[2] and the Equal Protection Clause, because "between 80 and 90 percent of [deputy wardens] are females and minorities, such as Hispanic-Americans, and Asian-Americans," Compl. ¶ 113, whereas, allegedly similarly situated "employees working

---

[2] The Supreme Court has construed 42 U.S.C. § 1981 "to forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987).

4

in the ranks of Captain and Deputy Inspector within the New York City Police Department and/or Battalion Chief and Deputy Chief within the New York City Fire Department," who are not subject to the cap, "generally do not fall within the status of a protected class, as recognized by applicable federal and state anti-discrimination statutes." Compl. ¶ 89.

Specifically, as alleged in the complaint, the cap is a city-wide policy that affects all New York City employees; however, it is presumably subject to changes based on citywide labor agreements. Although, the DOC, in enacting Rule 3.10.160(E), chose to implement the cap and–as the arbitrator found–made it part of its collective bargaining agreement with the DWA, employees of the NYPD and FDNY are not bound by that arbitrator's award, and the cap is not otherwise applied to them.

Now joining the DWA–suing on its own behalf, as well as on behalf of all its members–as plaintiffs, are its president, as well as two representative members of the alleged protected class.[3] In addition to the City and the DOC, they have joined Mayor DeBlasio and DOC Commissioner Joseph Ponte, in their individual and official capacities. Plaintiffs seek pecuniary and non-pecuniary damages.

---

[3] Pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii), plaintiffs Pamela Walton and William Diaz stipulated to the voluntary dismissal of their claims with prejudice. *See* ECF No. 50, Nov. 30, 2015.

## DISCUSSION

The essence of plaintiffs' complaint is that the application of the Rule has a disparate impact on them because of their protected status as minorities and females when compared to allegedly other similarly situated NYPD and FDNY employees who are not principally minorities or females. Plaintiffs also claim that the application of the Rule constitutes disparate treatment under Title VII and various State and City laws, is cognizable under Section 1981, and is violative of the Equal Protection clause,

As for the disparate-treatment claims, they are not since they each require plausible allegations of intentional discrimination. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)(under Title VII "[a] disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job related action"); *Burgis v. New York City Dept. Of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015)(under §1981 plaintiffs must "sufficiently allege that defendants acted with discriminatory intent."); *Patterson v. Cty of Oneida, N.Y.*, 375 F.3d 206, 226, 27 (2d Cir. 2004)(citations omitted) ("a plaintiff pursuing violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional"); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (same for New York Human Rights Law disparate-treatment claims); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (same for New York City Human Rights Law disparate-treatment claims). It cannot plausibly be maintained that the enactment of the

6

Rule by the DOC was intended to discriminate only against DWA minorities or women, since it applies to all DOC employees alike.

The disparate-impact claim is arguably different. In asserting that the alleged citywide policy capping compensatory compensation has been applied to them by the City - through the enactment by DOC of the Rule - but not to similarly situated members of the Police and Fire Departments, plaintiffs have satisfied the threshold pleading standard under *Iqbal. See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see Tsombandis v. West Haven Fire Hepartment*, 352 F.3d 565, 76-77 (2d Cir. 2003) (to demonstrate disparity, plaintiffs "must first identify members of a protected group that are affected by the neutral policy and then identify *similarly situated* persons who are unaffected by the policy.") (emphasis added).[4]

Plaintiffs' disparate-impact claims are somewhat attenuated and may not survive summary judgment since it may be difficult to establish the requisite "causal relationship" between the challenged practice or policy and the alleged disparity. *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001). This

---

[4] It is unclear from the complaint whether the plaintiffs intended to plead state and city law disparate-impact claims. However, because they are cognizable, and the analysis is the same under Federal law, *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 275 (S.D.N.Y. 2001), the Court construes the complaint to include such claims.

will undoubtedly require statistical evidence and analysis, and "[t]he statistics must reveal that the disparity is substantial or significant," and "must be of a kind and degree sufficient" to satisfy causation. *Id.* (internal quotations removed); *Chin v. Port Authority of New York & New Jersey,* 685 F.3d 135, 151 (2d Cir. 2012).

But for present purposes, the disparate-impact claims survive. In addition to satisfying the minimal pleading requirement under *Iqbal*, they cannot be barred by *res judicata.* The public policy ground for vacating an arbitration award in an Article 75 proceeding is "narrow." *See Matter of New York City Trans. Auth. v. Transport Workers Union of Am., Local 100,* AFL-CIO, 99 N.Y.2d 1, 6-7 (2002). As the state court aptly observed, it is not the province of an Article 75 proceeding in considering the public policy exception to engage in "extended factfinding or legal analysis." *See* ECF No. 32-3 (N.Y. Supreme Court Decision), at 8 (citing *Selman*, 773 N.Y.S.2d at 364). Yet, that would be exactly what the state judge would be required to do in analyzing plaintiffs' disparate-impact claims and determining whether the plaintiffs have adduced the requisite factual evidence to establish causation. *See Matter of Hirsch Const. Corp. v. Cooper*, 585 N.Y.S.2d 418, 420 (1st Dept. 1992) ("the courts will not vacate an arbitration on public policy grounds where, as here, there 'is nothing *on the face of the award* to indicate that it violates the public policy against recovery by unlicensed home improvement contractors." (emphasis added)(internal citations

omitted)).[5]

## CONCLUSION

The Federal and State disparate-impact claims survive. All other claims are dismissed.

**SO ORDERED.**

/S/ Frderic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 22, 2016

---

[5] Application of res judicata is further not warranted because there are additional plaintiffs, defendants, and claims for compensatory damages here that were not present or at issue in the narrow Article 75 proceeding.